**BERG et al. v. TEXTILE DYEING & PRINTING CO. OF AMERICA, Inc.**

District Court, D. New Jersey.

Jan. 7, 1936.

E. W. Marshall, of New York City (William S. Pritchard, of New York City, of counsel), for plaintiffs.

Louis Burgess, of New York City (John F. Neary, of New York City, of counsel), for defendant.

CLARK, District Judge.

This litigation presents but one issue—an alleged anticipating patent. Our decision thereon has been delayed by circumstances extraneous both to ourselves and to the record. As counsel are familiar therewith and as they are typical of our already much battered American administration of justice, we shall make no reference thereto in this place. The delay has only served to harden our original impression.

The art of the patents is that of weighting silk. Weighting seems to be a polite term, because in the trade the common reference is to "loading" silk. The word "loading" has a faint aroma of, shall we say, deceit about it; i. e., loading dice. The process seems to have rather the same aroma, for it is designed to transubstantiate silk. This transubstantiation seems to have two purposes, both, as we have said, deceitful. The first purpose is to stretch or swell the raw material and so to make two yards of silk grow where one grew before. The second is to actually increase the poundage. Thus the public are given less silk than they think they are getting and they think the silk they have is more lasting because it is heavier. This is succintly brought out in an article by a German expert on silk, Dr. Silberman, cited by counsel for the defendant:

"Regarding the purpose of the weighting process, it has already been mentioned in the beginning that in some cases an increase in volume, in others an increase in weight is intended. Though both manipulations must be regarded from a purely technical and theoretical standpoint as an adulteration of the product and are considered to minimize the excellent properties of pure silk fibre, the general trend of the modern industry to produce as much and cheap as possible must be borne in mind. In this respect however, a weighting for the purpose of increasing the volume is to be considered as the only one

to be rational, while a weighting for the purpose of increasing the weight cannot find an excuse even from this point of view, and should be characterized simply as a fraud. In all cases where an increase in diameter or in the thickness of the silk thread will not yield the desired effect, one has to take refuge in an increase in weight and the public even incites such a procedure by asking explicitly for 'heavy' silk materials being of the erroneous opinion that these are much more solid and durable." "Die Seide," Silberman. That the practice of weighting is anything but beneficial to the silk itself is asserted in an article entitled "Modern 'Silks' Cause Grief," by Joseph Loebl in volume 23, No. 1, Cleaning and Dyeing World:

"The physical cause is simple to explain and easy to understand. Just as a human being would break down if he were to carry too large a load on his back, so does the poor silk thread give way when compelled to carry not only its own weight, but more than one-and-a-half again its own weight in the form of tin crystals. That, we must all agree, is asking a lot of the delicate strands produced by the silkworm.

"The chemical cause for this damage results from the fact that the tin crystals, especially in the case of well-sized silks, decompose and slowly but surely destroy the silk thread. The damaging influence of the weighting is increased by the influence of hydrochloric acid, hence by the influence of common table salt, found in human perspiration as well as in food. Oftentimes salt comes into contact with the silk even before it has been worn, by way of the perspiring fingers of the dressmaker. And, of course, after the garment has been worn there is ample opportunity for perspiration to contact it. This explains why dresses may acquire holes while lying in clothes closets. Some dresses decompose under the armpits, where the perspiration consisting of common salt and acid is greatest.

"Under such circumstances, garments made from weighted silks may virtually fall apart upon being touched, worn, dyed or manipulated during the cleaning process." Pages 35, 36.

The weighting is accomplished by the addition of metal salts to the fibers. Both sides agree about the nature of this chemical process. The fabric or skeins are immersed in the soluble salts of metal. Many years ago it was discovered that tin was the particular metal for which the silk fiber had the greatest affinity. For that reason, tin (tetra) chloride was commonly used. It was fixed (i. e., made insoluble) in the fabric by hydrolysis (i. e., application of water). The resulting tin hydroxide, although insoluble in water, was not insoluble in hydrochloric acid. Consequently, a subsequent immersion in tin (tetra) chloride was impossible. In 1870 it was discovered that a treatment by an alkaline salt cured this defect and fixed or insolubilized the tin hydroxide even against the hydrochloric acid. The first alkaline salt used was sodium carbonate. Later other alkaline salts, such as sodium phosphate, sodium tungstate, and sodium silicate, were preferred by various patentees. These improved methods permitted numerous passes. More metal was accordingly absorbed and the fiber made proportionately heavier. We have said both sides agree about this chemical process. We include in the term "both sides" the rival patentees. At least their specifications so indicate.

Where, then, do the patents part company? We have seen that prior to Professor Sisley the only metal salt used to weight silk had been tin (tetra) chloride (the pink salt). The Sisley teaching was this:

"Now, the study of this reaction has led us to try its application to the formation, and to the fixation upon the fiber, of metallic salts other than salts of tin.

"These salts which have not yet been used for the weighting of silk, and for which we intend to claim in the present patent application their special application to this dyeing process, are the soluble salts of the following metals: zinc, magnesium, iron, lead, manganese, copper, antimony, chromium, barium, calcium, strontium and cerium. These soluble salts are employed conjointly with the tin salts and alkaline phosphates, silicates, or tungstates at present used in this process of weighting silks (Trans. lines 47–56)."

He said to himself, and through his patent to the world: A metal, tin, has been used, why not use other metals? He tried some other metals and they worked. The silk fibers absorbed them, they stayed absorbed, and so the art was improved.

What did Berg and Imhoff say to themselves, and through their patent to the world? It was this: "We have discovered that the A stage treatment, weight-

ing the fibers with tin salts and fixing them, imparts to the fiber thus treated an affinity for other metallic compounds. * * * In the best embodiment of our invention at present known to us, the further weighting is done with the aid of lead compounds, using any suitable soluble lead salt, generally lead acetate (P. 2; lines 87–99)."

We think Berg and Imhoff defeat their patent by their own language. They refer to the "best embodiment." There is an unbridgable chasm between a best embodiment and a touch of genius. As a matter of fact, their selection or best embodiment, lead, is not, according to the experts, the best embodiment for the stretching or swelling function of the weighting process. Some of the other metal salts of the Sisley patent, for instance cerium, are better. In its other purpose of gulling the gullible, lead would seem the quintessence of an obvious selection. Even the child with his now unpopular soldiers knows that lead is one of the heaviest commonly available metals. A fortiori, the ordinary chemist and metallurgist knows it. As the plaintiff inventor, Imhoff, himself said: "It is to be expected that a heavy metal would impart more weight." We do not think that a court should be expected to sustain a patent for such a proposition.

The bill is dismissed.